**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

EUGENA J. STANSBURY,

    Plaintiff,

v.                                                                           Case No. 2:18-cv-02746-SHM-cgc

DR. LEE FAULKNER,

and PHYSICIANS OF HEARTS

    Defendant.

---

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendant submits this Memorandum in Support of their Motion for Summary Judgment.

### Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. Rule of Civil Procedure 56. In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

Defendant's Undisputed Facts, Affidavits and Exhibits are incorporated herein by reference.

**Procedural Summary**

Plaintiff filed a Complaint Under the FLSA in this cause on October 26, 2018. Defendant filed an Answer on December 12, 2018. The Court entered a Scheduling Order (Doc 18) in this matter, February 26, 2019. Mediation was conducted in this matter May 7, 2019. Discovery was conducted including depositions of both parties and written discovery propounded by Defendant. Plaintiff filed an Amended Complaint Under the FLSA in this cause July 8, 2019. Defendant filed an Answer to the Amended Complaint on September 24, 2019. Return of Service of the Amended Complaint was entered into the record, concerning Physicians of Hearts, P.L.L. C. on August 26, 2019. Defendant filed a Motion for Partial Judgment on October 16, 2019. This mater is set for trial January 27, 2020.

**Background**

Defendant and Plaintiff were involved in an exclusive romantic dating relationship before and during the relevant time period. (Undisputed Fact. 19, 20) When Plaintiff worked less than 40 hour weeks she was not docked any pay, by her own admission. (Undisputed Fact #8) In this regard, Plaintiff enjoyed the perks of a salaried worker, more so than any office employees who actually worked at Defendant's medical office. Defendant Faulkner paid money to Plaintiff in addition to her regular scheduled pay on at least two documented occasions during the relevant time period. Plaintiff admitted to receiving other cash payments of hundreds of dollars from Dr. Faulkner on numerous occasions and paid for expensive jewelry and trips while Plaintiff worked for him (Undisputed Fact #45 and Exhibit 3, Affidavit of Dorothy Bills). Dr. Faulkner raised Plaintiff from $15 to $20 when she told him she needed more money. (Undisputed Fact #24) When they went out to eat and on dates, Dr. Faulkner paid. Plaintiff has not disputed that Dr. Faulkner did these things for her during the entire time that she was a sitter for his mother, Mrs. Faulkner. The financial

generosity of Dr. Faulkner with constant blurred lines between the romantic relationship and his trusting nature toward Plaintiff is undisputed as will be discussed later.

## Argument

1. Plaintiff is not a covered employee within the meaning of FLSA, 29 U.S.C. §§201 (the Act). Pursuant to the Department of Labor (DOL) interpretive rule §213(a)(15),

> …any employee employed on a casual basis in domestic service employment or on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of aged or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)…

The Supreme Court has ruled that the interpretive rules of the FLSA issued by the Department of Labor (DOL) can be relied upon by the Court. <u>Perez, Secretary of Labor v. Mortgage Bankers Association</u>, 135 S.Ct. 1199 (2015)

Plaintiff's job duties were not such that she should have been paid overtime compensation for any hours worked over forty (40) in a work week, as she was a companion to Dr. Faulkner's mother due to her age (90 years) and arthritis, and not working as a domestic worker more than 20% of her time spent at the Faulkner's home and is specifically exempt from the overtime payment provision of the Act.

The federal rules define companionship services to include fellowship and protection at 29 CFR 552.3. Fellowship includes, but is not limited to: conversation, reading, games, crafts, walks, errands, accompanying the individual to appointments, and social events. 29 CFR 552.6(a).

Protection is defined to include monitoring the person's safety and well-being while at home or away. CFR 552.6(a). Personal care (up to 20% of the time) is included in fellowship, which includes, but is not limited to activities that enable the person to live independently at home, including dressing grooming feeding, bathing, using the toilet,

transferring, meal preparation, driving, light housework, managing finances, assisting with physical taking of medication and arranging medical care, 29 CFR 552.6(b).

Plaintiff's duties were to engage Defendant's mother in social, physical, and mental activities, conversations reading, crossword puzzles, and monitored Defendant's mother's safety and well-being almost one hundred percent (100%) of the time. Defendant has claimed that she performed tasks that the evidence shows she was told not to perform, as they were not part of her job duty, which was to keep her mother company, protect her and fellowship with her.  Plaintiff testified as to her average day, which is set forth in the undisputed facts, from the time that she arrived to the end of her day.  If, and only if, Plaintiff worked until 7:00 p.m. on the days that she claims, she was simply not spending more than 20 % of her time (arguably 2 .5 hours) on personal care tasks other than exempt companionship.  (Undisputed Facts No. 47)  Plaintiff was hired as a sitter to be attentive to Mrs. Faulkner, which did not require personal care nor housework that would exceed 20% of Plaintiff's work time.

Plaintiff testified:

> Q. Okay. Is it correct to say that Dr. Faulkner stressed that your main duty was to be attentive to his mom?
> A. That was one of the duties that he asked that I do, make sure she's cleaned up after, based on her personal hygiene, you know, picking things up behind her, if anything spilled, you know.  Pick up behind her pretty much and be attentive to her.
> Q. And that's my question: Was his main goal that you be attentive to his mom?
> A. That was not his main goal.  His main goal was not just to be attentive to her ---well, rephrasing.  Being attentive to her consisted of both sitting with her, doing for her, stimulating her, and make sure that she was picked up after, whether it had to do with her personal hygiene or her dishes or crumbs, you know. (Plaintiff Dep. at 139:23-140:3)

Pursuant to Plaintiff's testimony set forth in the Undisputed Facts, Plaintiff spent most of her time watching television, doing cross word puzzles and setting out food that was provided by Dr. Faulkner's brother, Charlie.  Mrs. Faulkner toileted herself, as Plaintiff

4

waited by the bathroom door (Undisputed fact #35). (Exhibit 3, Affidavit of Dorothy Bills)  Plaintiff did not assist with a bath every day, or wash out the bathtub every day, as she testified that Mrs. Faulkner did not have a bath every day. Mrs. Faulkner was ambulatory with her walker; See Exhibit 7. Which are pictures taken by Complainant and produced in this lawsuit.  Plaintiff's cleaning was basically cleaning crumbs from under table after a meal, and wiping off a plastic mat next to Mrs. Falkner's bed, only once, in the mornings.  The only dishes to be washed consisted of a plate, a fork, a glass, a plate and bowl.  (Undisputed Fact #47).  Plaintiff did no more with medication, other than remind Mrs. Faulkner to take what Dr. Faulkner left out on his dresser (Undisputed Fact #36).    Plaintiff only did Mrs. Faulkner's hair every week or every other week. (Undisputed Fact #47).  Plaintiff did not wash Mrs. Falkner's hair.  (Undisputed Fact #47).   Plaintiff only accompanied Mrs. Faulkner to the doctor quarterly (Undisputed Fact #47).   Plaintiff only swept the garage because that was her preference.  Further, she only did that once a week and said it took no more than 15 minutes.  (Undisputed Fact #47). Dr. Faulkner forbid Plaintiff from cleaning his bedroom because he did not want her to go into his bedroom (Undisputed Fact #36 and Undisputed Fact #47).  Plaintiff cleaned the shower in the bathroom, after she took a shower herself because she dressed and changed clothes after walking with Dr. Falkner in the mornings (Undisputed Fact #38), or Plaintiff dressed to go out on dates with Dr. Faulkner. (Undisputed Fact #47).

  Plaintiff performed many tasks that were of no benefit to Defendant, as they were not in furtherance of providing companion services to Dr. Faulkner's mother and in fact took her away from her duty as a companion. Defendant has claimed that she performed tasks that the evidence shows she was told not to perform, as they were not part of her job duty, which was to keep her mother company, protect her and fellowship with her

5

(Undisputed Fact #47). Plaintiff performed tasks that were of no benefit to Defendant, as they were not in furtherance of providing companion services to Dr. Faulkner's mother and in fact took her away from her duty of companion.  For instance, Plaintiff testified that she spent time over a two week period reorganizing the garage which was not part of her job. (Plaintiff's Dep.at 232:4-233:10 and Undisputed Fact #47)

The Sixth Circuit considered circumstances similar to the case at bar in <u>Rosa Salyer v. Ohio Bureau of Worker's Compensation and Wesley Trimble</u> , 83 F.3d 784 (6th Cir. 1996)  The Court noted that Ms. Salyer dressed gave medication, assisted the infirm individual in getting around the home, helped him bathe, and cleaned his bed linen when it was soiled.   The court found that these tasks were within the definition of companionship.  Sayler was found to be exempt from the provisions of FLSA minimum wage and overtime provisions.

<u>Defendant is not an employer engaged in enterprise commerce.</u>

Defendant did not work in the medical office of Physician of Hearts, PLLC, and was only paid through the medical practice as a means of keeping a record and tracking her pay and ensuring that all federal taxes were accounted for (Undisputed Facts  #25 and#26).  Pursuant to §206(r), Plaintiff's work at Dr. Faulkner's home (undisputed Fact #28) was not an activity related to the medical practice, nor was it a unified operation, nor did it have a common purpose with the medical practice of Physician of Hearts, PLLC.  Pursuant to §203(s), Plaintiff's activities in the home of Dr. Faulkner were not to produce, sell or handle goods nor materials that were produced for commerce. (See Undisputed Fact #22)

An enterprise engaged in commerce or in the production of goods for commerce," is defined as an enterprise that--

**(A)(i)** has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

**(ii)** is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C. § 203(s)(1)(A).

The term "goods" is defined as wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof. 29 U.S.C. §203(i)

The Sixth Circuit has set forth its interpretation of materials in <u>Secretary of Labor v. Timberline</u>, 18-1763 (6th Cir. 2019). The court explained that to be considered "materials," an item "must have a significant connection with the employer's commercial activity; the business may not just somehow internally and incidentally consume the item." The court opined that the statute covers not *all* 'goods' and 'materials,' but only 'goods' and 'materials' that a company is engaged in 'handling, selling, or otherwise working on. *See* 29 U.S.C. § 203(s)(1)(A)(i)).

Physicians of Hearts, P.L.L. C. is not in the business of selling, manufacturing or producing wares or anything of the like. Physicians of Hearts, P.L.L. C. is a service business delivering medical services to patients.. Moreover, Plaintiff worked in his home, not at the medical office. Similarly, Dr. Faulkner was not running a business of any kind in his home.

<u>Damages</u>. Plaintiff's damage demand is speculative and she has not proven the amount that she was owed, nor quantified the exact number of hours that she worked over a 40 hour week, and stating that she is relying upon her estimate of average number of hours to support her

7

claim that she is owed $24,750.  Plaintiff has admitted that the money from her severance check should be deducted from the calculation of the damages, if any that she would be owed.

### Defendant has not violated recording keeping rules of the FLSA for a companionship worker.

According to 29 CFR 552.110(c) the employer of a domestic service employee who provides companionship services and who typically works a fixed schedule can rely on a schedule of daily and weekly hours as record of hours using an acceptable method that the schedule reflects actual hours worked and the exact hours worked are noted on the schedule.

Plaintiff has testified that she had set hours and that she was always provided with an exact pay stub and/or print out.  (Undisputed Facts #25 and 26)   Defendants have not failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine her wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.* , as he has produced the pay records of the third party vendor and Plaintiff has admitted that Defendant placed her pay stubs in her hands and/or gave her a print out.    (Undisputed Facts #25 and 26)

Plaintiff did not follow the rules of the Physicians of Hearts Handbook that required that any overtime work was to be pre-approved.  Plaintiff has produced no pay record that was signed by Defendant that would evidence his knowledge that she was claiming to work over 40 hours without his permission, nor that he knew of her claim of performing domestic work more than 20% of the time. The person that she acknowledged started her shift after Plaintiff never saw time sheets left for Dr. Falkner. See Exhibit 3. Affidavit pf Dorothy Bills)

<u>Defendant has not acted with willfulness or reckless disregard toward Plaintiff.</u>

Based upon the totality of all the circumstances of the romantic dating relationship Defendants deny any conduct, nor any action of a company with whom Dr. Faulkner is affiliated, that constitutes a willful violation of FLSA within the meaning of 29 U.S.C. §255 (a), as it has not been shown that Defendants had reckless disregard for the fact that either of their compensation practices with respect to Plaintiff were in violation of federal law, as he was extremely generous to Plaintiff in paying her for days not worked (Undisputed Fact #39 )and giving her numerous amounts of cash, checks and paying for expensive gifts and trips - all evidence that he made every attempt to generously provide financial comfort to Plaintiff, whom he trusted as his girlfriend during the relevant time period. (Exhibit 4, Copy of checks given to Plaintiff) Defendant's actions and treatment of Plaintiff has all times demonstrated good faith in compensating her. Further, there were times spent at Mrs. Faulkner's house, when the parties were taking a walk as a couple (Undisputed Fact #38), when Plaintiff was showering after the walk, when Plaintiff was changing clothes for a date (Undisputed Fact #16 and #17), or waiting for Dr. Faulkner to bring dinner home where all three would eat together (Undisputed Fact #47) or just waiting around for Dr. Faulkner, even though her relief arrived at 5 p.m.). Exhibit 3, Affidavit of Dorothy Bills

Plaintiff is not entitled to liquidated damages even if she could prove a violation of the law, because any acts or omissions giving rise to Plaintiff's claims, (if any) were undertaken or made in good faith, and the defendants had reasonable grounds for believing that all action or omissions did not violate the law. 29 U.S.C §260 states:

9

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages unpaid overtime compensation or liquidated damages, under the Fair Labor Standards Act, as amended, 29 U.S.C, §201 *et seq.*, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

Defendant did not know that Plaintiff was claiming to perform tasks other than fellowship and protection of Mrs. Falkner more than 20% of her time.

<u>Statute of Limitations.</u>

Further, Plaintiff is not entitled to damages for work performed prior to July 8, 2017 because it is outside the two year statute of Limitation against Physicians of Hearts, P.LL.C. as Plaintiff did not file her Amended Complaint against Physicians of Hearts, P.LL.C. prior to July 8, 2019.  Without a showing of willfulness, the two year statute of limitations governs.  See <u>Terwilliger v. Home of Hope, Inc.</u> (N.D. OKLA. 1999).  Pursuant to the relevant provisions of   29 U.S. C. §255 … (a) any action for unpaid overtime compensation or liquidated damages under the FLSA may be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

There is no evidence that  Dr. Faulkner acted intentionally to violate overtime rules.  A specific test or definition for willfulness is not set forth in the Act or the DOL rules. In looking at the surrounding circumstances, Dr. Faulkner went over and beyond to provide Plaintiff a comfortable standard of living, especially considering the fact that he raised her pay to $20 an hour to help meet her financial need very early in her employment.  Even Plaintiff testified that Dr. Faulkner was paying a very good rate for sitting with his mother at $15/hourly.

> A: …And I said, well, you know, I don't want you to think I'm unappreciative to the amount that you're paying me because $15 an hour, you know it's a decent pay for home healthcare.
> Q: So you thought $15 was a good rate of pay for…
> A: It's a decent rate, uh-huh  (Affirmative response.)
> Q: ---sitting with his mom?
> A: Yes.
> Q: Okay, Go ahead.
> A: And so that's when in November, starting in November of 2016.  That's when my rate of pay changed to $20.
> Q: Because you said you needed more money?
> A: yes.

(Plaintiff's Dep. at 128: 6-22).

The Court addressed this issue in <u>Souryavong v. Lackawanna Cty.</u>, No.: 15-3895 (3d Cir. Sept. 20, 2017).  The Court held that a plaintiff must put forward at least some evidence of the employer's awareness of a violation of the FLSA overtime mandate."   In sum, even if the employer cannot produce sufficient evidence of good faith, the plaintiff must prove that the employer *intentionally* violated the relevant wage and hour rule relevant to the claim in the lawsuit.  The <u>Souryavong</u> court found that a county entity had not acted willfully where it set up a classification structure for pay and benefits and to properly calculate overtime, and then despite all that allowed a misclassification of a monthly payment to continue for nine years.  The Court noted this even though the violation was recognized and corrected after a year.  The Court also explained an email that the plaintiffs relied on to show the county's human resources manager knew of the FLSA violation only showed that the county was aware of an overtime problem generally, which was not the same as an awareness of an FLSA overtime problem specifically.

In <u>Secretary of Labor v. Timberline</u>, 18-1763 (6th Cir.  2019) the Court recognized a two prong test as to when a Court can consider a defendants' argument that they compensated their employees above the industry average as relevant: (1) a good faith and (2) reasonable grounds for the determination that the employees were exempt from overtime coverage.

11

Dr. Faulkner relied upon a system of using a third party vendor to assure that Plaintiff's federal taxes and social security were fully accounted for. In addition, he paid Plaintiff for days that she did not work. In addition, he gave her a $1,500 check and hundreds of dollars on various occasions just to help her out. Plaintiff did not bring up the issue of overtime during the relevant period. Because Dr. Faulkner acted on Plaintiff's need for more money in October 2016, it is reasonable that absent Defendant raising any additional issues about her pay, to conclude that he had a good faith belief that he was lawfully and more than adequately compensating her within the law. By her admission Dr. Faulkner was compensating Plaintiff above the industry standard for a sitter.

Dr. Faulkner provided Plaintiff with his business handbook that clearly stated the rule that no one worked over time without prior authorization. Plaintiff acknowledged that she was aware of the rule. (Undiputed Facts #42) Plaintiff stated that she never discussed her January 2018 version of what her duties included with Dr. Faulkner. (Undisputed Facts #43). As discussed above, Plaintiff has acknowledged that Dr. Faulkner explained to her that her duties were to be attentive to his mom. (Undisputed Facts #22) The reasoning of Souryavong and Timberline, when applied to the facts of this case, dictate that there is not a basis for finding of willfulness or reckless disregard in this case. Plaintiff is not entitled to enhanced damaged, nor to extension of the applicable FLSA statute of limitation.

**WHEREFORE**, based upon the foregoing, Defendants move this Court for: an order dismissing Plaintiffs Amended Complaint under FLSA and that Plaintiff be denied all manner of claimed monetary relief including back wages, damages of all kind and nature, and claimed overtime and/or any other form of relief.

                                        Respectfully submitted,

                                        /s/ Yollander Hardaway

                                         Yollander Hardaway #17842
                                         217 Exchange Ave.
                                         Memphis, TN 38105
                                         Phone: (901) 866-9229 hardawayy@bellsouth.net

Dated October 18, 2019

## Amended CERTIFICATE OF SERVICE

     I, Yollander Hardaway, hereby certify that a copy of the Memorandum In Support of the Motion for Summary Judgment has been sent to the attorneys of record for Plaintiff, Attorney William B. Ryan and Attorney Janelle C. Osowski, at 1545 Union Ave., Memphis, TN 38104 by email, fax or U.S. Mail on this 21st day of October 2019., as attempts to file this pleading on October 18 and October 19 from two different lawyer's accounts was unsuccessful.

                                                    \s\ Yollander Hardaway
                                                    Yollander Hardaway