**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| EUGENA J. STANSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-02746 |
| | ) | |
| | ) | |
| DR. LEE FAULKNER and PHYSICIANS | ) | |
| OF HEARTS, P.L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This is a failure-to-pay-overtime case brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (the "FLSA"). Before the Court are two motions. The first is Plaintiff Eugena Stansbury's October 16, 2019 Motion for Partial Summary Judgment. (ECF No. 45.) Defendants Lee Faulkner and Physicians of Hearts, P.L.L.C. ("PoH") (collectively, the "Defendants") responded on November 6, 2019. (ECF Nos. 51-52.) Stansbury replied on November 18, 2019. (ECF No. 55.) The second motion is Defendants' October 21, 2019 Motion for Summary Judgment. (ECF Nos. 49-50.) Stansbury responded on November 18, 2019. (ECF No. 56.) Defendants did not file a reply.

For the following reasons, Stansbury's Motion for Partial Summary Judgment is DENIED in part and GRANTED in part. Defendants' Motion for Summary Judgment is DENIED.

## I.   Background

PoH is a cardiology medical clinic in Memphis, Tennessee. (ECF No. 51-1 ¶ 1.)  Faulkner is the sole member and owner of PoH. (Id.)  For each of the calendar years 2016, 2017, and 2018, PoH had a gross volume of sales made or business done of not less than $500,000.  (ECF No. 46 ¶ 1.)

In August 2016, Faulkner hired Stansbury to work in his home to assist his ailing mother ("Mrs. Faulkner").  (ECF No. 56-1 ¶¶ 19, 48.)[1]  Stansbury was scheduled to work from 8:00 a.m. to 4:30 p.m., Monday through Friday, and was paid $15 per hour.  (Id. ¶¶ 24, 29, 58.)  The parties dispute Stansbury's exact role and the duties she performed while working in Faulkner's home, but agree that Stansbury was instructed to be attentive to Mrs. Faulkner; assist her with bathing; make sure that she was steady

---

[1] Local Rule 56.1(d) provides that "failure to respond to . . . a non-moving party's statement of additional facts, . . . indicate[s] that the asserted facts are not disputed for purposes of summary judgment." L.R. 56.1(d).  Stansbury stated additional undisputed facts in her Response to Defendants' Motion for Summary Judgment.  (See ECF No. 56-1 ¶¶ 48-67.)  Defendants did not file a reply or respond to Stansbury's additional undisputed facts.  To the extent relevant, Stansbury's statement of additional facts is not disputed for purposes of this summary judgment motion.  See L.R. 56.1(d); Moore v. City of Memphis, 175 F. Supp. 3d 915, 917 & n.8 (W.D. Tenn. 2016), aff'd, 853 F.3d 866 (6th Cir. 2017).

while using her walker; monitor her eating; perform light
housework; sweep; mop; clean the bathrooms; clean any accidents;
do laundry; and wash dishes.  (See id. ¶¶ 22, 47.)

In September 2016, in addition to working four days at
Faulkner's home, Stansbury started working one day a week in PoH's
medical office doing office work.  (See ECF No. 56-2 at 10:19-
12:15.)  While working in the medical office, Stansbury brought
patients back and got lists of their medications.  (ECF No. 55-1
¶ 6.)  Sometime near the end of September 2016 or beginning of
October 2016, Stansbury stopped working in PoH's medical office
and continued to work five days a week at Faulkner's home.  (ECF
No. 56-1 ¶ 28.)  Sometime in October or November 2016, Stansbury's
pay was increased to $20 per hour.  (See ECF No. 45-4 at 126:12-
127:15; ECF No. 56-1 ¶ 56.)

When Faulkner hired Stansbury in August 2016, Faulkner
provided her with a PoH employee handbook and instructed her to
read it.  (ECF No. 45-4 at 27:22-28:2; ECF No. 56-1 ¶¶ 21, 60.)
That handbook included a rule that Faulkner must approve all
overtime before it was performed.  (See ECF No. 45-3 at 59:10-14;
ECF No. 56-1 ¶¶ 42, 57, 60; ECF No. 56-4 at 26.)

On May 14, 2018, Faulkner and PoH terminated Stansbury.  (See
ECF No. 45-3 at 22-25; ECF No. 56-1 ¶¶ 63-64.)  On October 26,
2018, Stansbury filed her complaint against Faulkner alleging
unpaid overtime wages under the FLSA.  (ECF No. 1.)  Stansbury

3

alleges that she worked from October 11, 2016, to November 2017 at an average of fifty-five hours per week without receiving overtime compensation. (ECF No. 1 ¶ 9; see also ECF No. 28 ¶ 12.) On July 8, 2019, after the Court granted leave to amend, (ECF No. 27), Stansbury filed an amended complaint that added PoH as a defendant. (ECF No. 28.) Defendants filed an amended answer to Stansbury's amended complaint. (ECF No. 40.) On October 21, 2019, Stansbury moved for partial summary judgment. (ECF No. 45.) On October 21, 2019, Defendants filed a Motion for Summary Judgment. (ECF No. 49.)

## II.  Jurisdiction

The Court has jurisdiction over Stansbury's claim. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Stansbury's amended complaint alleges that Defendants failed to pay her overtime compensation under the FLSA. (ECF No. 28 ¶ 1). Stansbury's claim arises under the laws of the United States.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having

4

had sufficient opportunity for discovery, lacks evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

Although the parties in this case have filed cross-motions for summary judgment, the legal standard remains the same, and

5

each motion will be considered separately.   See Lee v.
Loandepot.com, LLC, No. 14-cv-01084-EFM, 2016 WL 4382786, at *3
(D. Kan. Aug. 17, 2016) (citations omitted).   To the extent the
cross-motions overlap, the Court addresses the legal arguments
together.   Id. (citation omitted).

## IV.  Analysis

The relevant FLSA overtime provision states:

**(a) Employees engaged in interstate commerce; additional
applicability to employees pursuant to subsequent
amendatory provisions**

(1) Except as otherwise provided in this section, no
employer shall employ any of his employees who in any
workweek is engaged in commerce or in the production of
goods for commerce, or is employed in an enterprise
engaged in commerce or in the production of goods for
commerce, for a workweek longer than forty hours unless
such employee receives compensation for his employment
in excess of the hours above specified at a rate not
less than one and one-half times the regular rate at
which he is employed.

29 U.S.C. § 207(a).  This provision dictates that employees are not
required to work more than forty hours per seven-day week without
overtime compensation at a rate not less than one and one-half
times their regular pay.  Elwell v. Univ. Hosps. Home Care Servs.,
276 F.3d 832, 837 (6th Cir. 2002) (citing 29 U.S.C. § 207(a)(1)).
Employers who fail to comply with this requirement may be liable
to their affected employees in the amount of their unpaid overtime
compensation and an equal amount of liquidated damages.  Whaley v.
Henry Ford Health Sys., 172 F. Supp. 3d 994, 1001 (E.D. Mich. 2016)

6

(internal quotation marks omitted) (citing Moran v. Al Basit LLC, 788 F.3d 201, 204 (6th Cir. 2015)).

To establish an FLSA overtime claim, a plaintiff must show that the employer or its employees are engaged in interstate commerce.  See Bey v. WalkerHealthCareIT, LLC, No. 2:16-cv-1167, 2018 WL 2018104, at *3 (S.D. Ohio May 1, 2018); 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, . . . .") (emphasis added).  Because the FLSA governs only employers, a plaintiff must also establish an employer-employee relationship.  See Whaley, 172 F. Supp. 3d at 1001; 29 U.S.C. § 207(a) ("[N]o employer shall employ any of his employees . . . .") (emphasis added).

The FLSA creates exemptions that are affirmative defenses to an employer's duty to pay a covered employee overtime.  See 29 U.S.C. § 213(a)(1)-(19).  An employer has the burden of proving that an employee falls under any of these exemptions.  Elwell, 276 F.3d at 837 (citation omitted); see also Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974) (noting the general rule that the application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof).

To succeed on an unpaid overtime claim under the FLSA, a plaintiff must establish: (1) an employer-employee relationship;

7

(2) that the employer or its employees are engaged in interstate commerce; (3) that the employee worked more than forty hours; and (4) that overtime was not paid.  See Whaley, 172 F. Supp. 3d at 1001 (citations omitted).  Once a plaintiff has established these elements, the burden shifts to the employer who may show by a preponderance of the evidence that one of the exemptions afforded by § 213 of the FLSA applies to the employment in question. Kowalski v. Kowalski Heat Treating, Co., 920 F. Supp. 799, 806 (N.D. Ohio 1996).

### A. Stansbury's October 16, 2019 Motion for Partial Summary Judgment

In her Motion for Partial Summary Judgment, Stansbury asks the Court to conclude as a matter of law that: (1) PoH is Stansbury's employer, (ECF No. 45-1 at 6-9); and (2) PoH is a "covered enterprise" within the meaning of 29 U.S.C. § 203(s)(1)(A).  (Id. at 4-6.)

### 1. Employer-Employee Relationship

Stansbury asks the Court to determine as a matter of law that PoH is Stansbury's employer.  (Id. at 6-9)  The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  An entity "employs" an individual if it "suffer[s] or permit[s the individual] to work."  Id. § 203(g).  Given the FLSA's remedial purpose, see Keller v. Miri Microsystems LLC, 781 F.3d 799, 806 (6th Cir. 2015), the FLSA defines "'employer' more broadly than the term would be interpreted in traditional common

8

law applications." Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991) (quoting McLaughlin v. Seafood, Inc., 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)). Whether there is an employment relationship is a question of law. See Eberline v. Douglas J. Holdings, Inc., 339 F. Supp. 3d 634, 641 (E.D. Mich. 2018) (subsequent history omitted) (citing Fegley v. Higgins, 19 F.3d 1126, 1132 (6th Cir. 1994)); U.S. Dep't of Labor v. Cole Enter., Inc., 62 F.3d 775, 778 (6th Cir. 1995) (citing Elliott Travel & Tours, Inc., 942 F.2d at 965).

In her briefing, Stansbury relies on what has become known in this Circuit as the "economic reality" test. (ECF No. 45-1 at 6-9). Under that test, there is an employer-employee relationship if the employee is "as a matter of economic reality . . . dependent upon the business to which [she] render[s] service." Keller, 781 F.3d at 807 (quoting Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir. 1984)). The "economic reality test" is not the proper test here. It is used primarily to determine whether an employment relationship is classified as employer-employee or independent contractor. See, e.g., Acosta v. Off Duty Police Servs., Inc., 915 F.3d 1050, 1055 (6th Cir. 2019). Here, the parties do not dispute how Stansbury's employment relationship with PoH is classified, but rather, during the relevant time, whether Stansbury was employed by PoH at all.

9

Defendants respond to Stansbury's reliance on the economic reality test, arguing that Stansbury never worked in the office of PoH (other than a short time outside the relevant period), did not work to further the goals of PoH, and was paid through PoH's payment system for administrative purposes only. (See ECF No. 51 at 2-5.)  The Court understands Defendants' argument to be, not that Stansbury was employed as an independent contractor for PoH, but that Stansbury was not employed by PoH at all (at least in any meaningful sense).  The relevant question is whether PoH employed Stansbury, see 29 U.S.C. § 203(e)(1),(g), not whether Stansbury was, as a matter of economic reality, dependent on PoH, see Keller, 781 F.3d at 807.[2]

The Court cannot conclude that PoH employed Stansbury during the relevant time because PoH did not "suffer or permit [Stansbury] to work."  29 U.S.C. § 203(g).  "The term of art 'work,' which includes 'to suffer or permit to work,' means 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  Brock v. City of Cincinnati, 236

---

[2]  The Department of Labor recently promulgated regulations that disapprove of using the economic reality test in determining joint employer status.  See 29 C.F.R. § 791.2(c) ("Whether the employee is economically dependent on the potential joint employer is not relevant for determining the potential joint employer's liability under the Act. Accordingly, to determine joint employer status, no factors should be used to assess economic dependence.") (effective March 16, 2020).

F.3d 793, 801 (6th Cir. 2001) (internal citation omitted) (citing Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)).  Stansbury's argument fails because Stansbury's work in Faulkner's home was not "pursued necessarily and primarily for the benefit" of PoH.  See Brock, 236 F.3d at 801.  PoH is a cardiology medical clinic that provides medical services to Memphis residents.  (ECF No. 51-1 ¶ 1.)  During the time for which Stansbury seeks compensation, Stansbury did not work in PoH's office, but worked solely in Faulkner's home.  (ECF No. 51-1 ¶ 6; ECF No. 55-1 ¶ 9.)  Housekeeping and homecare of a business owner's mother, although perhaps tangentially related to the business, are not work pursued necessarily and primarily for the benefit of a cardiology medical clinic.  Stansbury's arguments that Faulkner testified that PoH was Stansbury's employer, that PoH issued tax forms to Stansbury, that Stansbury was paid through the same payroll systems that PoH uses, and that PoH was included as an employer in Stansbury's termination notice, (ECF No. 45-1 at 7-9), are inapposite because the main inquiry is whether Stansbury worked necessarily and primarily for the benefit of PoH.  See Brock, 236 F.3d at 801.  She did not.

The Court cannot conclude as a matter of law that PoH was Stansbury's employer during the relevant time.  Stansbury's Motion for Partial Summary Judgment on this issue is DENIED.

11

## 2. Covered Enterprise

Stansbury next asks the Court to determine as a matter of law that PoH is a "covered enterprise" within the meaning of 29 U.S.C. § 203(s)(1)(A).[3]   (ECF No. 45-1 at 4-6.)   That provision states:

> (s)(1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that --
>
>> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>>
>> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).   It is undisputed that "Physicians of Hearts has employees engaged in commerce . . . ."   (ECF No. 51-1 ¶ 2.)   The parties have stipulated that PoH satisfies the second prong (§ 203(s)(1)(A)(ii)).   (See ECF No. 46.)   The Court concludes as a matter of law that PoH is a covered enterprise.[4]   Stansbury's Motion for Partial Summary Judgment on this issue is GRANTED.

---

[3] Defendants in their Motion for Summary Judgment ask the Court to determine as a matter of law that PoH is not a "covered enterprise." (See ECF No. 49-2 at 6-7.)   Because both parties ask the Court to determine this question, the Court decides it regardless of its conclusion about the employment relationship between Stansbury and PoH. See supra, at 8-11.

[4] Defendants argue that the "handling clause" of § 203(s)(1)(A)(i) does not apply to them.   (See ECF No. 51 at 5-9; No. 49-2 at 6-7.)   That is not germane because, to be covered under the statute, an enterprise need only fall under one of the clauses of § 203(s)(1)(A)(i).   Given this Circuit's recent, broad interpretation of enterprise coverage in

**B. Defendants' October 21, 2019 Motion for Summary Judgment**

In their Motion for Summary Judgment, Defendants ask the Court to determine as a matter of law that: (1) Defendants are entitled to the FLSA's "companionship exception"; (2) PoH is not a "covered enterprise"; (3) Stansbury cannot prove that she worked more than forty hours a week; (4) Defendants have not violated the FLSA's recordkeeping requirements; (5) Stansbury is not entitled to liquidated damages; and (6) Stansbury's recovery amounts are limited by the relevant statute of limitation.  (ECF No. 49-2 at 3-12.)

**1. Companionship Exemption**

Once a plaintiff has established the elements of a failure-to-pay-overtime claim, an employer may show by a preponderance of the evidence that one of the exemptions afforded by § 213 of the FLSA applies to the employment in question.  See Kowalski, 920 F. Supp. at 806; 29 U.S.C. 213(a)(1)-(19).  These exemptions are to be given a "fair reading." Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018).[5]  One of these exemptions is known as the "companionship exemption," which exempts "any employee

_____

Secretary of Labor v. Timberline South, LLC, it is likely that Stansbury would be entitled to enterprise coverage under the "handling clause" as well.  See 925 F.3d 838, 848 (6th Cir. 2019) (holding that an employer was a covered enterprise under 29 U.S.C. § 203(s)(1)(A)'s "handling clause" because its employees used equipment manufactured outside the state).

[5] Previously, FLSA exemptions were to be "narrowly construed against the employer[] . . . ." Encino Motorcars, LLC, 138 S. Ct. at 1148 n.7 (Ginsburg, J., dissenting).

employed in domestic service employment [who] provide[s] companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." 29 U.S.C. § 213(a)(15). Defendants ask the Court to decide as a matter of law that they are entitled to this exemption as a defense. (See ECF No. 49-2 at 3-6.)

The relevant regulations interpreting the FLSA define "companionship" as used in § 213(a)(15) as:

    (a) [T]he provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.

    (b) The term companionship services also includes the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek. The provision of care means to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care).

29 C.F.R. § 552.6(a) & (b).   Part of 29 C.F.R. § 552.6 was previously known as the "general household exception."   See Foster v. Americare Healthcare Servs., Inc., 150 F. Supp. 3d 868, 877 (S.D. Ohio 2015); 29 C.F.R. § 552.6 (2014).   Twenty-nine C.F.R. § 552.6 was substantially amended in 2015 to expand the types of tasks that fell outside the companionship exemption if performed more than 20% of the time.   See Application of the Fair Labor Standards Act to Domestic Service, 78 FR 60454-01, 60455, 60463-68 (October 1, 2013).   What was previously known as the "general household exception" is perhaps now more aptly termed the "care exception."   Compare 29 C.F.R. § 552.6 (2014), with 29 C.F.R. § 552.6(b) (2015).

In this Circuit, the care exception works as an exception to the companionship exemption.   See Cummings v. Bost, Inc., 218 F. Supp. 3d 978, 984 (W.D. Ark. 2016) (citing Toth v. Green River Reg'l Mental Health/Mental Retardation Bd., Inc., 753 F. Supp. 216, 217 (W.D. Ky. 1989), aff'd sub nom. Hengesback v. Green River Reg'l Mental Health/Mental Retardation Bd., Inc., 985 F.2d 560 (6th Cir. 1993)).[6]   Under this framework, an employer first bears the burden of proving that it is entitled to the companionship exemption of 29 U.S.C. § 213(a)(15).   If satisfied, the burden

---

[6] These cases applied this burden-shifting framework under the pre-2015 version of 29 C.F.R. § 552.6.   Nothing in the Amendment suggests that the burden-shifting framework has changed.

shifts to the employee to prove that she is entitled to the care exception (i.e., submit proof that she performed care-related work more than 20% of the time).  See 29 C.F.R. § 552.6(b).

Stansbury is entitled to coverage under the FLSA.  Under the FLSA, the role of "domestic worker" is an enumerated role entitled to individual coverage.  See 29 U.S.C. § 207(l) ("No employer shall employ any employee in domestic service in one or more households for a workweek longer than forty hours unless such employee receives compensation for such employment in accordance with subsection (a).") (emphasis added); id. § 202(a) ("Congress further finds that the employment of persons in domestic service in households affects commerce.").  The relevant regulation interpreting the FLSA explicitly includes "companions" and "caretakers" in its definition of "domestic service employment." See 29 C.F.R. § 552.3 (defining "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary).  The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use.  This listing is illustrative and not exhaustive.") (emphases added).

There is a dispute in the record about the exact title, duties, and role of Stansbury's job.  Defendants classify Stansbury as a "companion."  (ECF No. 49-2 at 3.)  Stansbury classifies herself as a "domestic worker."  (ECF No. 45-4 at 10:6-10; ECF No. 56 at 2; ECF No. 56-1 ¶¶ 50-53.)  Even classifying Stansbury as Defendants do (i.e., "companion"), her role falls under the regulation's definition of "domestic service employment."  See 29 C.F.R. § 552.3.  Stansbury is entitled to individual coverage under the FLSA.  See 29 U.S.C. § 207(l); Bey, 2018 WL 2018104, at *3.

Defendants have offered evidence that supports their entitlement to the companionship exemption.  Both parties agree that some of Stansbury's duties fall under the regulatory definitions of "fellowship and protection." (See ECF No. 56 at 5-6; No. 56-1 ¶¶ 22, 47.)  Stansbury's own testimony supports a finding that her role was, at least in part, a companion.  (See ECF No. 56-2 at 43:5-44:10.) Defendants submit a list of job tasks that Stansbury wrote and that directly overlap with the tasks listed in the regulatory definition of companionship.  Compare (ECF No. 51-4 at 2), with 29 C.F.R. § 552.6(a) & (b).  Although Faulkner never confirmed that Stansbury performed the duties detailed in these lists, (see ECF No. 56-1 ¶ 43), Stansbury testified that she performed them (see ECF No. 56-1 ¶ 40; No. 56-2 at 263:3-24).  Defendants have met their burden.  See Salyer v. Ohio Bureau of Workers' Comp., 83 F.3d 784, 787-89 (6th Cir. 1996)

17

(holding that the companionship exemption applied when the services the employee performed "f[e]ll squarely within" the regulatory definitions of that term). The burden shifts to Stansbury to prove that there is a dispute of fact about entitlement to the companionship exemption. See Toth, 753 F. Supp. at 217.

Stansbury argues that, although some of her duties fell under the regulatory definitions of fellowship and protection, she is entitled to the care exception because more than 20% of her time was spent "performing housework for the benefit of the household[7] and assisting with activities of daily living and instrumental activities of daily living." (See ECF No. 56 at 6.) Stansbury testified that she performed a variety of care-related tasks. (See ECF No. 56-2 43:5-46:21; 95:6-97:24; 263:3-263:24; see also ECF No. 51-4 at 2; ECF No. 56-1 ¶ 40.) The exact time spent on each of those tasks is unclear from the record. (See ECF No. 56-1 ¶ 47.) Her testimony suggests that she could have spent more than 20% of her time each week performing them. (See ECF No. 56-2 at 95:20-97:13; 101:15-104:3.)

To preclude summary judgment, it is enough for Stansbury to list and testify that she performed care-related tasks and allege

---

[7] "The term companionship services does not include domestic services performed primarily for the benefit of other members of the household." 29 C.F.R. § 552.6(c).

18

that she met the 20% threshold for the care exception.  See, e.g., Anglin v. Maxim Healthcare Servs., Inc., No. 6:08-cv-689-ORL-22DAB, 2009 WL 2473685, at *4 (M.D. Fla. Aug. 11, 2009) (precluding summary judgment when plaintiff listed the household-related tasks she performed and stated in deposition that she "regularly spent" more than 20% of her time performing general household work); Fernandez v. Elder Care Option, Inc., No. 03-cv-21998, 2005 WL 8165440, at *21 (S.D. Fla. Aug. 1, 2005) (finding summary judgment improper when plaintiff stated in an affidavit that he performed household duties and it was not possible to determine from the record whether more than 20% of his time was spent performing those duties); Terwilliger v. Home of Hope, Inc., 21 F. Supp. 2d 1294, 1301-02 (N.D. Okla. 1998) (precluding summary judgment when plaintiffs claimed they met the 20% threshold and submitted affidavits stating they "performed general household work such as cleaning and grocery shopping at least twenty percent of the hours they worked each week").

Defendants do not appear to dispute that Stansbury performed tasks that would fall under 29 C.F.R. § 552.6(b)'s definition of care, (see ECF No. 45-3 at 30:13-31:8), but argue that Stansbury was never told to perform those tasks and that they were not part of her job duties.[8]  (See ECF No. 49-2 at 3-6; see also ECF No.

---

[8] Defendants cite no cases to support this defense.  Faulkner testified that he knew Stansbury performed care-related tasks.  (See ECF No. 45-3

51-4 at 1.)  There is a material dispute about what Stansbury's role and duties were.

On the current record, a reasonable factfinder could find that Stansbury spent more than 20% of her time on care-related tasks.  Stansbury has proven that there is a dispute of fact about her entitlement to the care exception.  Summary judgment on this issue is inappropriate.  See Bonnette v. Cal. Health & Welfare Agency, 414 F. Supp. 212, 214 (N.D. Cal. 1976) ("At this stage of the proceedings the amount of time plaintiffs devote to general household work remains a triable issue of fact; hence summary judgment is inappropriate.").

Defendants' Motion for Summary Judgment on this issue is DENIED.

### 2. Covered Enterprise

Defendants ask the Court to determine as a matter of law that PoH is not a "covered enterprise" within the meaning of 29 U.S.C. § 203(s)(1)(A).  (See ECF No. 49-2 at 6-7.)  The Court has concluded that PoH is a covered enterprise.  See supra, at 12.  Defendants' Motion for Summary Judgment on this issue is DENIED.

---

at 30:13-31:8.)  "[I]t is the responsibility of management to see that work is not performed if it does not want it to be performed. . . . [M]anagement 'cannot sit back and accept the benefits without compensating for them.'"  Cole Enterprises, Inc., 62 F.3d at 779-80 (citing 29 C.F.R. § 785.13).

### 3. Worked More Than Forty Hours

To succeed on a failure-to-pay-overtime claim, a plaintiff must establish that she worked more than forty hours a week. See Whaley, 172 F. Supp. 3d at 1001. Defendants ask this Court to find as a matter of law that Stansbury cannot prove that she worked more than 40 hours a week. (See ECF No. 49-2 at 7-8.)

"[An] FLSA plaintiff must prove by a preponderance of evidence that he or she performed work for which he or she was not properly compensated." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 602 (6th Cir. 2009) (internal alterations, quotation marks, and citation omitted). "The most common method of proof of undercompensation is discovery and analysis of the employer's records." Keller, 781 F.3d at 816 (citing O'Brien, 575 F.3d at 602). When an employer has not introduced records that definitively establish the hours that an employee worked, an employee's testimony to the number of hours she worked is enough to create a genuine issue of material fact to preclude summary judgment. See Keller, 781 F.3d at 816.

Faulkner has submitted no evidence that definitively establishes the number of hours Stansbury actually worked. Faulkner testified that he reported Stansbury worked forty hours a week, every week, regardless of the number of hours she actually worked. (ECF No. 56-1 ¶ 26.) Stansbury testified that, from October 2016 to November 2017, she worked from 8:00 a.m. to 7:00

21

or 7:30 p.m., Monday through Friday.  (ECF No. 56-1 ¶¶ 30, 59; No. 56-2 at 124:16-20, 125:21-126:14.)  She also submits timesheets showing that, for certain periods during the relevant time, she worked more than forty hours a week.  (See ECF No. 56-3 at 1-4.) That is sufficient to preclude summary judgment.  See Keller, 781 F.3d at 816; Ramirez v. Rifkin, 568 F. Supp. 2d 262, 273 (E.D.N.Y. 2008) (denying summary judgment when employer did not keep adequate records and plaintiff testified that she worked more than forty hours a week); see also Mumbower v. Callicott, 526 F.2d 1183, 1186 (8th Cir. 1975) (stating that the district court properly relied on the employee's recollection of the number of hours she worked when her employer failed to keep adequate records as required by the FLSA).

Defendants' Motion for Summary Judgment on this issue is DENIED.

### 4. Recordkeeping Requirements

Defendants ask the Court to determine as a matter of law that that they did not violate the FLSA's recordkeeping requirements. (See ECF No. 49-2 at 8.)  The FLSA mandates that employers "make, keep, and preserve" records of employees' "wages, hours, and other conditions and practices of employment . . . ."  29 U.S.C. § 211(c); see also 29 C.F.R. § 516.1.  Although it is unlawful for an employer to fail to comply with these recordkeeping requirements, see 29 U.S.C. § 215(a)(5), the FLSA does not create

22

a private cause of action for an employee against an employer for violation of recordkeeping provisions.  See Elwell, 276 F.3d at 843.  Failure to meet the recordkeeping requirements, however, does affect evidentiary burdens in unpaid-overtime-wages cases under the FLSA.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946), superseded by statute on other grounds, 29 U.S.C. § 254(a).

Normally, "[a]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated."  White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 873 (6th Cir. 2012) (citing Myers v. Copper Cellar Corp., 192 F.3d 546, 551 (6th Cir. 1999)).  However, if an employer does not keep adequate records in compliance with the FLSA, then an employee can carry the employee's burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  Mt. Clemens Pottery Co., 328 U.S. at 687–88; see also Keller, 781 F.3d at 816 n.10.

Defendants argue that they did not keep records improperly in violation of the FLSA because they satisfy 29 C.F.R. § 552.110(c)

-- which expands on the FLSA's recordkeeping requirements -- because Stansbury, as a domestic service employee, worked a fixed schedule, and under § 552.110(c), employers can rely on the employee's fixed schedule as proof of hours actually worked. (See ECF No. 49-2 at 8.) Defendants read § 552.110(c) generously. Twenty-nine C.F.R. § 552.110(c) provides:

> [W]here a domestic service employee works on a fixed schedule, the employer may use a schedule of daily and weekly hours that the employee normally works and either the employer or the employee may:
>
> > (1) Indicate by check marks, statement or other method that such hours were actually worked; and
> >
> > (2) When more or less than the scheduled hours are worked, show the exact number of hours worked.

29 C.F.R. § 552.110(c). Defendants argue that their method of recordkeeping satisfies § 552.110(c) because Stansbury had set hours and Defendants periodically provided her with paystubs or printouts that included the number of hours she worked. (ECF No. 56-1 ¶ 26.)

Reading the words "statement or other method" in § 552.110(c)(1) favorably to Defendants, one could conclude that Faulkner's provision of paystubs or printouts of the number of hours Stansbury worked satisfies this part of the FLSA's recordkeeping requirements. However, Defendants' argument fails because: (1) the statements were not accurate reflections of the number of hours Stansbury "actually worked"; and (2) neither

24

Faulkner nor Stansbury "show[ed] the exact number of hours worked" when Stansbury worked "more or less than" her scheduled hours. See 29 C.F.R. § 552.110(c)(1) & (2). Faulkner testified that he paid Stansbury for forty hours a week no matter how many hours she actually worked. (See ECF No. 45-3 at 80:8-81:16; No. 56-1 ¶ 26; No. 56-5 at 22:6-24:18.) He testified that he paid her for forty hours a week even when he knew she worked less. (See ECF No. 51-3 at 92:2-93:8.) On this record, a reasonable jury could find that Defendants violated the FLSA's recordkeeping requirements. The Court cannot find as a matter of law that Defendants did not violate the FLSA's recordkeeping requirements. Defendants' Motion for Summary Judgment on this issue is DENIED.

### 5. Liquidated Damages

Defendants ask the Court to conclude as a matter of law that, if a violation of the FLSA is proven, Stansbury is not entitled to liquidated damages. (ECF No. 49-2 at 9.) Section 216(b) of the FLSA provides that an employer who violates § 207 is liable for liquidated damages equal to the amount of unpaid wages. See 29 U.S.C. § 216(b). Those liquidated damages are compensatory, not punitive. Martin v. Ind. Mich. Power Co., 381 F.3d 574, 584 (6th Cir. 2004). A court may exercise its discretion to limit or deny liquidated damages, but only if an employer demonstrates both good faith and reasonable grounds for failing to pay wages. See Sec'y of Labor v. Timberline South, LLC, 925 F.3d 838, 856 (6th Cir.

25

2019); see also 29 U.S.C. § 260. "This burden on the employer is substantial." Elwell, 276 F.3d at 840. If an employer fails to carry it, the court may not limit or deny liquidated damages. Ind. Mich. Power Co., 381 F.3d at 584 (emphasis added) (citations omitted).

> [To satisfy its burden of acting in good faith,] an employer must show that it took affirmative steps to ascertain the [FLSA's] requirements, but nonetheless violated its provisions. Establishing that the employer did not willfully misclassify an employee is insufficient to show good faith. Rather, the employer has an affirmative duty to ascertain and meet the FLSA's requirements, and an employer who negligently misclassifies an employee as exempt is not acting in good faith.

Timberline, 925 F.3d at 856 (citations, quotations, and alterations omitted); see Ind. Mich. Power Co., 381 F.3d at 584 ("To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'") (quoting Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 908 (3d Cir. 1991)).

Defendants argue that, based on the totality of the circumstances, they acted in good faith and had reasonable grounds for failing to pay Stansbury because: (1) Faulkner never acted intentionally to violate the FLSA's overtime requirements; (2) Faulkner did not know that Stansbury was performing tasks other than fellowship and protection of Mrs. Faulkner more than 20% of the time; (3) Faulkner relied on third party vendors to assure

26

that Stansbury's federal taxes and social security taxes were fully accounted for; (4) Faulkner paid Stansbury for days when she did not work and gave her money on various other occasions to help her out; (5) Stansbury never raised the issue of overtime during the relevant period and never asked for more money, with one exception in October 2016; (6) Faulkner was compensating Stansbury above the industry standard; (7) Faulkner went above and beyond to provide Stansbury a comfortable standard of living and paid her a very good rate and helped her meet her financial needs early on in her employment; and (8) Faulkner provided Stansbury with a handbook that stated the overtime policy and Stansbury was aware of the rule. (See ECF No. 49-2 at 9-12.)

The relevant inquiry is whether Faulkner took affirmative steps to ascertain the requirements of and compliance with the FLSA. See Timberline, 925 F.3d at 856; Ind. Mich. Power Co., 381 F.3d at 584. Faulkner admits that he never sought legal advice about whether he was in compliance with the FLSA. (ECF No. 56-5 at 51:19-55:9.) He admits that he never read anything about how Stansbury should be paid. (See id.) The record is devoid of any evidence that Faulkner took affirmative steps to comply with the FLSA. A defendant who fails to take affirmative steps cannot demonstrate good faith. See Timberline, 925 F.3d at 856. That is fatal to Defendants' position that Stansbury is not entitled to liquidated damages. See, e.g., Acosta, 2019 WL 5197329, at *9

27

(finding for employee on this issue when defendants admitted that they did not take any affirmative steps to ensure they were in compliance with the FLSA); Lopez-Gomez v. Jim's Place, LLC, No. 2:14-cv-02309-JPM, 2015 WL 4209809, at *6 (W.D. Tenn. July 10, 2015) (same).  Defendants' arguments that they acted in good faith are not supported by appropriate evidence.  See Timberline, 925 F.3d at 857 ("Defendants' argument that they compensated their employees above the industry average is irrelevant to whether they met their burden to establish good faith and reasonable grounds for the determination that Timberline's employees were exempt from overtime coverage."); Chao v. Barbeque Ventures, LLC, 547 F.3d 938, 942 (8th Cir. 2008) (collecting cases rejecting the argument that employers had acted in good faith because "no employees complained about overtime pay"); Cooper Elec. Supply Co., 940 F.2d at 909 ("A showing that an employer did not intentionally violate the Act falls short of satisfying [the] objective component of the good faith requirement.") (internal quotation marks and citation omitted);[9] cf. Monroe v. FTS USA, LLC, 763 F. Supp. 2d 979, 991

---

[9] Defendants cite Souryavong v. Lackawanna County for the proposition that "a plaintiff must put forward at least some evidence of the employer's awareness of a violation of the FLSA mandate."  872 F.3d 122, 127 (3d Cir. 2017); (ECF No. 49-2 at 11-12.)  Souryavong addressed the issue of willfulness when considering extending the FLSA's statute of limitations.  See 872 F.3d at 126-27; 29 U.S.C. § 255(a).  In its brief discussion of liquidated damages, Souryavong says that "[a] lack of evidence going to good faith is not the same as evidence in support of intentionality."  872 F.3d at 127.

(W.D. Tenn. 2011) ("[T]he existence of written policies setting forth proper rules for the payment of overtime does not itself immunize an employer from a finding that the employer willfully violated the FLSA.").[10]   Defendants' Motion for Summary Judgment on this issue is DENIED.

### 6.   Limitation of Liability

The FLSA has a two-year statute of limitations for actions to recover unpaid overtime. 29 U.S.C. § 255(a); Elwell, 276 F.3d at 842.  The statute of limitations limits the period for which a plaintiff can collect unpaid overtime wages.  See Hall v. Cocke Cty., Tenn., 940 F.2d 660, at *3 (6th Cir. 1991) (unpublished table opinion).  The FLSA extends the limitations period to three years if the defendant's violation was willful.  29 U.S.C. § 255(a).

Defendants ask the Court to conclude as a matter of law that they did not willfully violate the FLSA. (ECF No. 49-2 at 9.)  If Defendants were found to violate the FLSA, but not willfully violate, a two-year statute of limitations would govern.  See 29 U.S.C. § 255.  Stansbury filed her amended complaint naming PoH on July 8, 2019.  (ECF No. 28.)  Defendants argue that, absent

---

[10] Defendants' other arguments about Faulkner's miscellaneous payments to Stansbury and desire to provide her with "financial stability" are not germane.  Those payments were made in the context of his personal relationship with Stansbury, not because he meant to compensate her for overtime worked or comply with the requirements of the FLSA.  (See ECF No. 45-3 at 62:19-25); Walton v. United Consumers Club, Inc., 786 F.2d 303, 312 (7th Cir. 1986).

willfulness, Stansbury may only recover damages for overtime worked between July 8, 2017, and November 2017. (See ECF No. 49-2 at 10).

Stansbury responds that the three-year statute governs because Defendants' violation was willful. (See ECF No. 56 at 10); 29 U.S.C. § 255(a). She also argues that Defendants miscalculate the applicable time because her amended complaint "relates back" to the original complaint, which was filed on October 26, 2018. (See ECF No. 56 at 10 n.5; No. 1); Fed. R. Civ. P. 15(c)(1)(C).

Stansbury seeks damages from October 11, 2016, to November 2017. (ECF No. 28 ¶ 12.) If the date of her original complaint controls (October 26, 2018), a two-year statute of limitations would allow her to collect damages from October 26, 2016, to November 2017. If the date of her amended complaint controls, a two-year statute of limitations would allow her to collect damages from July 8, 2017, to November 2017. A three-year statute of limitations under either date would allow her to collect the full damages she seeks.

An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (adopting standard promulgated in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985)). An

30

employer who acts unreasonably or negligently in violation of the FLSA does not act willfully.  See Elwell, 276 F.3d at 842 n.5 (citing McLaughlin, 486 U.S. at 135); Hall, 940 F.2d 660, at *3. The burden of proving an employer's willfulness falls on the employee.  Frye v. Baptist Mem'l Hosp., Inc., No. 07-2708, 2011 WL 1595458, at *9 (W.D. Tenn. Apr. 27, 2011) (citation omitted), aff'd, 495 F. App'x 669 (6th Cir. 2012).

The willfulness determination is a question of fact.  A district court should only answer the question as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  See Souryavong v. Lackawanna Cty., 872 F.3d 122, 126 (3d Cir. 2017) (citations and quotation marks omitted); Taha v. Bucks Cty. Penn., 367 F. Supp. 3d 320, 333 (E.D. Pa. 2019); see also Figueroa v. District of Columbia, 923 F. Supp. 2d 159, 167 (D.D.C. 2013) ("The determination of willfulness is necessarily fact-specific.") (citing Youngblood v. Vistronix, Inc., 2006 WL 2092636, *5 (D.D.C. July 27, 2006)).  Here, a reasonable factfinder could find that Faulkner's failure to inquire into the number of hours Stansbury worked and compensating her for forty hours a week regardless was a willful violation of the FLSA.  (See ECF No. 56-1 ¶¶ 25-26, 39); Elwell, 276 F.3d at 844 ("[A]n employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime.") (citing

31

Majchrzak v. Chrysler Credit Corp., 537 F. Supp. 33, 36 (E.D. Mich. 1981)). A reasonable factfinder could also find that, because Faulkner specifically instructed Stansbury not to work more than 40 hours a week, did not know Stansbury was working overtime, and gave Stansbury a handbook outlining overtime policy, Faulkner's failure to compensate Stansbury for overtime work was not willful. (See ECF No. 56-1 ¶¶ 21, 29, 39, 42); Phuong v. Nat'l Acad. of Scis., 901 F. Supp. 12, 15 (D.D.C. 1995) (stating that a reasonable factfinder could not find that an employer's conduct was willful when the employee was aware of the employer's overtime policies, never submitted timesheets for the overtime hours for which she later sought payment, was paid for all hours she did record, and was later offered an opportunity to receive payment for the hours she failed to record). Summary judgment on this question is not warranted. See, e.g., Lopez-Gomez, 2015 WL 4209809, at *8 (denying summary judgment on whether defendants willfully violated the FLSA); Figueroa, 923 F. Supp. 2d at 167 (same); Terwilliger, 21 F. Supp. 2d at 1304 (same).

Whether a two- or three-year statute of limitations is applicable turns on whether Defendants' conduct was willful. See 29 U.S.C. § 255(a). That determination is one for trial. Whether an amended complaint "relates back" to a prior complaint is a question of law. Under Federal Rule of Civil Procedure 15(c)(1)(C), an amendment to a complaint that "changes the party"

32

will relate back to the date of the original complaint if: (1) the claim asserted in the amendment arises out of the conduct, transaction, or occurrence set out or attempted to be set out in the original complaint; (2) the new party received notice of the suit within 90 days of the filing of the original complaint such that it will not be prejudiced in defending the merits of the case; and (3) the new party knew or should have known within 90 days of the filing of the original complaint that, but for a mistake in the identity of the proper party, the action would have been brought against it.  See Fed. R. Civ. P. 15(c)(1); Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 544-45 (2010); Jones v. Yancy, No. 07-cv-02263, 2016 WL 10590155, at *4 n.4 (W.D. Tenn. Dec. 12, 2016).

The Court need not consider whether Stansbury's amended complaint meets the requirements of Rule 15(c)(1)(C).  The amended complaint has a threshold defect: it adds PoH as an additional defendant rather than substituting PoH for Faulkner.  (Compare ECF No. 1, with ECF No. 28.)  The substitution of a correct defendant for a misidentified party will relate back to the date of the original pleading if the requirements of Rule 15(c)(1)(C) are met. See Reed v. U.S. Bancorp, No. 1:12-cv-344, 2013 WL 1249231, at *5-7 (E.D. Tenn. Mar. 26, 2013) (finding that the amended complaint related back to date of original complaint where plaintiff sought "leave to amend her complaint to completely remove" the

33

misidentified defendant "and assert her claims only against" the proper party). "[A]n amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010) (quoting In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449 (6th Cir. 1991)); see also Lester v. Wow Car Co., 675 F. App'x 588, 592-93 (6th Cir. 2017) (affirming trial court's conclusion that claims against new defendants did not relate back to the date of the original pleading "[s]ince the New Defendants were added to the complaint and not even plausibly substituted for an original named defendant").

In her motion for leave to file her amended complaint, Stansbury asked the Court to allow her to add PoH as a co-defendant. (ECF No. 26 ¶ 6) ("Plaintiff seeks leave to amend her Complaint to add 'Physicians of Hearts, P.L.L.C.' as a co-Defendant.") (emphasis added). Stansbury's addition of PoH was a substantive change in her case, not a technical correction of a pleading mistake. See In re Biozoom, Inc. Sec. Litig., 93 F. Supp. 3d 801, 811-12 (N.D. Ohio 2015) (amended pleading did not "relate back" because it "involve[d] adding both new Defendants and new Plaintiffs" rather than "the substitution of plaintiffs or defendants"); Hiler v. Extendicare Health Network, Inc., No. 5:11-cv-192, 2013 WL 756352, at *4 (E.D. Ky. Feb. 26, 2013) (amended

pleading did not "relate back" because the defendants it named were "newly added parties, resulting not in substitution or a party change but rather an enlargement of the defendant roster"); DeBois v. Pickoff, No. 3:09-cv-230, 2011 WL 1233665, at *10-11 (S.D. Ohio Mar. 28, 2011) (amended pleading did not "relate back" because it "add[ed] three new defendants" rather than effecting a "one-for-one substitution"). Stansbury's amended complaint adding PoH does not relate back to the date of her original complaint.

Because determining whether the FLSA's statute of limitation limits Faulkner's potential liability turns on a disputed question of fact (i.e., whether Faulkner's conduct was willful), summary judgment on this issue is not appropriate. Defendants' Motion for Summary Judgment on this issue is DENIED.

## V.   Conclusion

For the foregoing reasons, Stansbury's Motion for Partial Summary Judgment is DENIED in part and GRANTED in part. Defendants' Motion for Summary Judgment is DENIED.


So ordered this 18th day of February, 2020.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE