IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EUGENA J. STANSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-02746 |
| | ) | |
| | ) | |
| DR. LEE FAULKNER and PHYSICIANS | ) | |
| OF HEARTS, P.L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Eugena Stansbury sues Defendants Dr. Lee Faulkner and Physicians of Hearts, P.L.L.C. (collectively, "Defendants"), alleging failure to pay overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.  The lawsuit arises from Stansbury's work in Faulkner's home from October 2016 to November 2017, assisting his ailing mother.

From March 2, 2020, to March 3, 2020, the Court held a bench trial on Stansbury's claim. (ECF Nos. 71-74.) On April 30, 2020, Stansbury filed her proposed findings of fact and conclusions of law. (ECF No. 78.) On May 1, 2020, Defendants filed their proposed findings of fact and conclusions of law. (ECF No. 79.) On May 14, 2020, Stansbury responded to Defendants' proposed findings of fact and conclusions of law. (ECF No. 81.) On May 15, 2020,

Defendants responded to Stansbury's proposed findings of fact and conclusions of law. (ECF No. 82.) As required by Federal Rule of Civil Procedure 52, the Court's findings of fact and conclusions of law follow.

## I.  Background

As provided by the Pretrial Order (ECF No. 71), the parties agreed to the following summary of the case:

> Plaintiff Eugena J. Stansbury filed this lawsuit against Dr. Lee Faulkner and Physicians of Hearts, P.L.L.C. for failure to pay overtime wages in violation of the federal Fair Labor Standards Act. Plaintiff contends she was hired by Defendants to work as a domestic worker in Dr. Faulkner's home and that she was erroneously classified as exempt from receiving overtime.

> Defendants deny all of Plaintiff's claims and contend that Plaintiff was exempt pursuant to the FLSA's companionship exemption. Defendants further allege that Plaintiff was not employed by Physicians of Hearts, P.L.L.C. Plaintiff denies all of Defendants' defenses and affirmative defenses.

(ECF No. 71 at 2.)

## II. Jurisdiction

The Court has jurisdiction over Stansbury's claim. Under 28 U.S.C. § 1331, United States district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Stansbury's amended complaint alleges that Defendants failed to pay her overtime compensation under the FLSA. (ECF No. 28 ¶ 1.) Stansbury's claim arises under the laws of the United States.

### III. Findings of Fact

#### A. Stipulated Facts

As provided by the Pretrial Order, the parties have agreed that the following facts are not in dispute:

1. Dr. Lee Faulkner is the sole member and owner of Physicians of Hearts, P.L.L.C., which is a cardiology medical clinic in Memphis, TN.

2. Ms. Stansbury was terminated on or around May 14, 2018.

(ECF No. 71 at 4-5.)

#### B. Facts Established at Trial

Defendant Faulkner is a cardiologist who is the sole member and owner of the medical clinic Physicians of Hearts, P.L.L.C. ("PoH"), which is located in Memphis, Tennessee. (See ECF No. 76 at 27:22-28:25.) PoH has no offices outside Tennessee. (Id. at 85:7-85:12.) PoH does not advertise or have referral relationships with any places outside Tennessee. (Id. at 85:16-85:21.) PoH serves patients in the Greater Memphis area, some of whom reside in Mississippi and Arkansas. (Id. at 29:10-29:17.) PoH purchases medical supplies outside Tennessee. (Id. at 29:18-29:20.) In 2016 and 2017, PoH grossed more than $500,000 a year. (Id. at 29:21-23.) PoH does not place sitters, caregivers, certified nursing assistants, or anyone in private homes. (Id. at 89:7-89:12.) Faulkner makes all of the hiring and firing decisions for PoH and sets the pay and hours for PoH employees. (Id. at 29:24-30:3.)

Faulkner lives in Memphis, Tennessee, with his mother ("Ms. Faulkner"). (Id. at 36:15-36-19, 37:11-37:16.) Ms. Faulkner is 92 years old, widowed, and has been diagnosed with rheumatoid arthritis. (Id. at 31:19-32:1, 88:19-88:21.) Faulkner has noticed what he believes to be early signs of dementia in Ms. Faulkner. (Id. at 78:17-78:23.) Ms. Faulkner takes medicine that helps slow the development of dementia. (Id. at 78:2-78:11, 79:7-79:20.) Ms. Faulkner does not drive, sometimes uses a walker inside the home, and sometimes uses a wheelchair outside the home. (Id. at 95:12-95:19; No. 77 at 69:21-70:2.) In the home, Faulkner and Ms. Faulkner share the same kitchen and common living space but have separate bathrooms and bedrooms. (ECF No. 76 at 100:11-100:19.)

In August 2016, Faulkner hired Stansbury to work in PoH's office. (Id. at 30:4-30:16, 94:20-94:21, 96:2-96:10.) Stansbury was hired at $15 an hour. (Id. at 32:5-32:7, 145:12-145:13.) She worked 40 hours a week from 8:00 a.m. to 4:30 p.m. (Id. at 95:20-96:1, 145:16-145:17.) When Stansbury was hired, she was provided an employee handbook. (Id. at 67:11-67:19.) The handbook said that anybody who wanted to work overtime must inform Faulkner. (Tr. Ex. No. 7 at 30) ("Overtime work must always be approved before it is performed."). Faulkner generally did not allow his employees to work overtime and encouraged them not to do so. (See ECF No. 77 at 133:24-134:17.) Since 2015, Faulkner has had information about labor laws governing overtime posted in PoH's

4

office.  (See id. at 141:8-142:13.)  This includes the definition
that overtime is any time worked over 40 hours a week.  (Id. at
142:5-142:13.)  Faulkner's employee handbook also describes labor
laws governing overtime.  (See Tr. Ex. No. 7 at 29-30.)  There is
a formal timekeeping system at PoH that records employees' time
when they begin and end their shifts.  (See ECF No. at 32:8-32:18;
Tr. Ex. No. 7 at 30.)  When Faulkner hired Stansbury, he did not
seek legal advice about her job classification or method of pay.
(See ECF No. 76 at 69:23-71:5; No. 77 at 142:14-142:21, 159:16-
160:6.)

     In September or October 2016, Stansbury transitioned from
working in the medical office at PoH to working in Faulkner's home
assisting Ms. Faulkner.  (See ECF No. 76 at 30:17-31:18.)  In
October 2016, Stansbury's pay was raised to $20 an hour.  (Id. at
52:4-52:14, 145:19-145-20.)  Her pay raise was due, in part, to
her representation to Faulkner that she needed more money.  (See
id. at 61:23-61:25, 151:7-151:11, 153:6-153:18; No. 77 at 135:18-
136:12.)  Sometime in October 2016, Stansbury stopped working in
PoH's office and worked solely in Faulkner's home.  (ECF No. 76 at
96:2-96:18.)  Stansbury was scheduled to work assisting Ms.
Faulkner from 8:00 a.m. to 4:30 p.m.  (Id. at 37:17-37:22, No. 77
at 125:3-125:7.)  The overtime policy expressed in PoH's employee
handbook -- requiring that all overtime work be approved by
Faulkner in advance -- applied to Stansbury when she worked in

Faulkner's home.   (ECF No. 76 at 34:13-18, 61:16-61:19, 67:20-68:11, 92:19-92:23.)

Faulkner's directive and intent when he hired Stansbury to work in his home was that she sit with Ms. Faulkner, keep Ms. Faulkner company, and keep Ms. Faulkner mentally stimulated -- through completion of puzzles and the like -- to prevent dementia. (Id. at 88:17-89:6.)   Stansbury perceived her role differently. While working with Ms. Faulkner, Stansbury performed tasks including sweeping, mopping, minimal meal preparation, doing dishes, doing laundry, folding clothes, cleaning bathrooms, cleaning the garage, pulling flowers and cutting hedges, hanging up clothes, watching Ms. Faulkner to ensure that she would not fall, reminding Ms. Faulkner to take her medication, taking Ms. Faulkner on outings, taking Ms. Faulkner to doctor's appointments, and assisting Ms. Faulkner with bathing and grooming.  (Id. at 95:1-95:6; see generally id. at 97:21-105:4.)   Stansbury testified that she spent more than 20% of her time each week performing some of these tasks.  (See ECF No. 77 at 17:8-17:11; see generally ECF No. 76 at 111:11-133:14.)

Faulkner did not tell Stansbury to perform any of the additional tasks.  (ECF No. 77 at 126:25-127:5.)  Faulkner did not know that Stansbury performed those other tasks.  (ECF No. 76 at 89:16-89:23; No. 77 at 127:6-127:8.)  Faulkner did not see any evidence that Stansbury had performed those other tasks.  (See id.

at 73:6-73:18; No. 77 at 127:9-127:14.)  In a few instances, when Faulkner later learned that Stansbury was performing tasks other than those he had instructed her to perform -- such as pulling flowers in the garden, cleaning his bedroom, cleaning his bathroom sink, cleaning the garage, washing Ms. Falkner's hair -- he or his sister asked her not to do so.  (See ECF No. 77 at 43:23-44:20, 127:23-128:1, 128:16-128:21, 146:3-146:16.)  Faulkner's sister, Annie Evelyn Faulkner, vacuumed, dusted, and cleaned the house generally.  (See ECF No. 77 at 42:4-42:24, 59:20, 79:11-80:14.) Faulkner did his own laundry.  (Id. at 127:15-127:17.)

There is no official list of tasks or duties that Stansbury was told to perform.  In January 2018, Stansbury sought legal advice.  (ECF No. 77 at 159:11-159:13.)  On January 5, 2018, Stansbury created a typed list of duties titled "List of Caregiver Duties for Annie B. Faulkner" and "List of Housekeeping Duties." (ECF No. 76 at 236:3-236:9; No. 77 at 16:1-16:13; Tr. Ex. No. 13.) The tasks described on those lists mostly coincide with Stansbury's testimony about the tasks she performed.  (Compare Tr. Ex. No. 13 at 1-2, with ECF No. 76 at 95:1-95:6, and id. at 97:21-105:4.)

There was no time clock or other method to record Stanbury's time working in Faulkner's home.  (ECF No. 76 at 34:11-34:12.) Faulkner did not keep written time records of the hours Stansbury worked in his home.  (Id. at 38:10-38:16.)  Faulkner and Stansbury had an understanding that Stansbury would not work more than 40

7

hours a week. (Id. at 39:7-39:10, 61:16-61:23, 71:6-71:11.)
During her employment, Faulkner paid Stansbury for 40 hours a week.
(Id. at 145:16-145:22; see generally Tr. Ex. No. 2.) On at least
one occasion, Stansbury was asked to work on Saturday, and Faulkner
paid her for those extra hours by writing her a check. (ECF No.
76 at 39:17-39:23.)

At trial, timesheets and daily task log sheets Stansbury had
created were entered into the record. (Tr. Ex. Nos. 5, 6, 8, 9,
12.) The timesheets account for 12 of the 52 weeks for which
Stansbury seeks compensation. (See generally id.) Both Faulkner
and Stansbury produced those timesheets and daily task log sheets.
After commencement of this suit, Faulkner found in his bedroom
some timesheets and some daily task logs that Stansbury had
created. (See ECF No. 76 at 59:14-17, 60:2-60:3, 61:6-61:12,
64:25-65:12, 66:9-66:15.) Faulkner did not instruct Stansbury to
keep those timesheets or daily logs, had never seen them before,
and did know they existed or that Stansbury was keeping them at
the time. (Id. at 58:5-58:9, 59:10-59:13, 61:2-61:3, 61:13-61:16,
66:9-66:12.) The timesheets covered different time periods, some
within the time for which Stansbury is seeking compensation and
some outside that time. (See Tr. Ex. Nos. 5, 8.) The hours on
the timesheets range from fewer than 40 hours a week to more than
55 hours a week. (See generally id.) Some timesheets are
handwritten and some are computer-generated. (See generally id.)

8

They are on different forms and in different formats. (See generally id.) Although there was a place for a supervisor to sign and date some of the timesheets, they were unsigned. (See generally id.) Faulkner testified that he had never signed them. (ECF No. 76 at 59:7-59:13; see also Tr. Ex. Nos. 5, 8.) Stansbury testified that she had filled out the timesheets contemporaneously for each week worked. (ECF No. 76 at 109:5-109:9.) She testified that she had completed parts of the timesheets and task logs daily. (Id. at 110:8-110:14, 125:15-125:19.) She testified that she had made copies of the timesheets and left copies of the timesheets on Faulkner's bed. (Id. at 109:12-109:16, 125:20-125:21.) Faulkner testified that Stansbury was not allowed in his bedroom, and that Stansbury knew she was not allowed in his bedroom. (ECF No. 77 at 127:23-128:1.)

Every two weeks, Stansbury received a paycheck through a third-party payroll processing company. (See ECF No. 76 at 145:6-145:10; Tr. Ex. No. 2.) The third-party payroll processing company was the one PoH used to pay its employees. (ECF No. 76 at 50:20-51:4.) In 2016, PoH provided a W-2 tax form to Stansbury. (Id. at 52:16-52:19, 53:1-53:4; Tr. Ex. No. 3.) Stansbury's earning records show that PoH took tax deductions from the wages paid her. (ECF No. 76 at 51:20-52:3; Tr. Ex. No. 2.)

When Stansbury worked in Faulkner's home, another employee, Dorothy Williams Bills, worked there assisting Ms. Faulkner in the

9

evenings.  (See ECF No. 76 at 183:19-183:22; No. 77 at 96:11-97:6,
124:21-125:10.)  Bills was hired to work from 5:00 p.m. to around
9:00 p.m. (ECF No. 77 at 96:13-96:17.)  Faulkner was okay with the
fact that sometimes Ms. Faulkner would be alone for about half an
hour (from 4:30 p.m. to 5:00 p.m.).  (See ECF No. 76 at 190:19-
190:25.)  If Faulkner got home earlier than 9:00 p.m., Bills would
leave.  (Id. at 196:8-96:19.)  Sometimes, about once or twice a
month, Stansbury asked Bills if Bills could come in a little
earlier, around 4:00 p.m.  (Id. at 97:11-97:21.)  Sometimes, after
Bills arrived, Stansbury stayed around the house, but never
continued working or assisting Ms. Faulkner.  (See id. at 97:22-
98:18; No. 77 at 41:24-42:3.)

Stansbury and Faulkner were dating throughout her employment.
(ECF No. 77 at 136:18-136:24.)  They would consistently go on walks
together in the morning before Stansbury started working.  (See
ECF No. 76 at 198:4-199:4; No. 125:11-126:13.)  They would go to
the movies together every Friday evening, and sometimes on the
weekend as well.  (ECF No. 77 at 137:2-137:9, 139:8-139:19.)  Some
evenings they would attend Memphis Grizzlies basketball games
together.  (See id. at 137:10-137:138:11.)

On May 14, 2018, Stansbury was terminated.  (See Tr. Ex. No.
4.)  The separation notice stated two reasons for that termination:

Reason 1: [Stansbury] served as a caretaker for my mother,
and was expected to effectively communicate with me and other
family members regarding my mother's care and needs, maintain

10

a positive attitude, ensure a safe environment, exercise self-control, exercise good judgment and reframe [sic] from allowing personal issues to cloud her judgment.   After she arrived for work on the mornings of May 7-9, 2018, [Stansbury] angrily confronted me, and yelled and screamed at me, which is not conducive to a safe work environment, affected our communication, showed a lack of stability, good judgment, and a lack of self-control and a positive attitude.

Reason 2: [Stansbury] made a public spectacle of herself at the Kappa Alpha Psi, Black and White Gala, on 4/28/18, by yelling at me, confronting my guest, who left the table to avoid a confrontation with her, and interjecting herself at my table.

(Id.)   The separation notice listed both Faulkner and PoH as Stansbury's employer.   (Id.)

**IV.   Conclusions of Law**

**A. Legal Standards**

The relevant FLSA overtime provision provides:

**(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a).   This provision dictates that employees are not required to work more than forty hours a seven-day week without overtime compensation at a rate not less than one and one-half times their regular pay.   Elwell v. Univ. Hosps. Home Care Servs.,

11

276 F.3d 832, 837 (6th Cir. 2002) (citing 29 U.S.C. § 207(a)(1)). Employers who fail to comply with this requirement may be liable to their affected employees in the amount of their unpaid overtime compensation and an equal amount of liquidated damages. Whaley v. Henry Ford Health Sys., 172 F. Supp. 3d 994, 1001 (E.D. Mich. 2016) (internal quotation marks omitted) (citing Moran v. Al Basit LLC, 788 F.3d 201, 204 (6th Cir. 2015)).

To succeed on an unpaid overtime claim under the FLSA, a plaintiff must establish: (1) an employer-employee relationship; (2) that the employer or its employees are engaged in interstate commerce; (3) that the employee worked more than forty hours; and (4) that overtime was not paid. See id. (citations omitted). To establish the "more than forty hours" element, the employee must prove "both that: (1) she performed work for which she was not properly compensated, and (2) her employer had actual or constructive knowledge of that overtime." Rangel v. Paramount Heating & Air Conditioning, LLC., No. 2:17-cv-473, 2019 WL 4345698, at *2 (S.D. Ohio Sept. 12, 2019) (citations omitted). Work not requested but suffered or permitted is work time. 29 C.F.R. § 785.11. "[S]uffered or permitted" means that an employer must know, or have reason to believe, that the employee is continuing to work. Wood v. Mid-Am. Mgmt. Corp., 192 F. App'x 378, 380 (6th Cir. 2006). "[T]he law stops short of requiring the employer to pay for work it did not know about, and had no reason to know

12

about." Richardson v. All. Residential Co., No. 18-cv-1114, 2020 WL 551316, at *9 (D. Md. Feb. 4, 2020), on reconsideration in part, 2020 WL 2061512 (D. Md. Apr. 29, 2020) (citations and internal quotation marks omitted).

An employer may have reason to believe that an employee is working overtime if the employer could have discovered through the exercise of reasonable diligence that overtime was being worked. Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 389 (6th Cir. 2016). Reasonable diligence does not mean "omniscience." Id. "[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 876 (6th Cir. 2012) (citations omitted); Frye v. Baptist Mem'l Hosp., Inc., No. 07-cv-2708, 2011 WL 1595458, at *9 (W.D. Tenn. Apr. 27, 2011), aff'd, 495 F. App'x 669 (6th Cir. 2012) ("Courts in this circuit have denied recovery in FLSA cases where an employee is aware of her employer's system for reporting work that falls outside the employee's normal, forty-hour shift, but fails to report that work.") (collecting cases); see also Lillehagen v. Alorica, Inc., No. SACV 13-0092-DOC, 2014 WL 6989230, at *17 (C.D. Cal. Dec. 10, 2014) ("In the Sixth Circuit, an employer has no constructive knowledge of uncompensated overtime when the employee fails to follow the employer's 'reasonable procedures' for

reporting hours worked.") (citing White, 699 F.3d at 876).  There
are two exceptions to this rule: one, if the employer prevents the
employee from reporting overtime; or, two, the employer is
otherwise notified of the employee's unreported work.  Craig, 823
F.3d at 389.

The burden rests with the plaintiff to prove by a
preponderance of the evidence that she worked more than 40 hours.
O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 602 (6th Cir.
2009) (internal alterations, quotation marks, subsequent history,
and citation omitted).  "The most common method of proof of
undercompensation is discovery and analysis of the employer's
records." Keller v. Miri Microsystems LLC, 781 F.3d 799, 816 (6th
Cir. 2015).  However, if an employer does not keep adequate records
in compliance with the FLSA, an employee can carry her burden "if
[s]he proves that [s]he has in fact performed work for which [s]he
was improperly compensated and if [s]he produces sufficient
evidence to show the amount and extent of that work as a matter of
just and reasonable inference.  The burden then shifts to the
employer to come forward with evidence of the precise amount of
work performed or with evidence to negative the reasonableness of
the inference to be drawn from the employee's evidence." Anderson
v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946); see also
Keller, 781 F.3d at 816 n.10.  "This relaxed burden, however,
applies to damages questions only after an employee has met the

initial burden to 'establish[ ] liability' by showing that the employee performed uncompensated overtime work." <u>Viet v. Le</u>, 951 F.3d 818, 822 (6th Cir. 2020) (emphasis and alterations in original) (quoting <u>O'Brien</u>, 575 F.3d at 603).   The burden of preponderance of the evidence "governs the threshold question whether the plaintiff worked overtime at all." <u>Id.</u>

### B. Analysis

Stansbury is a covered employee under the FLSA. (<u>See</u> ECF No. 64 at 16-17; ECF No. 82 at 40-41.)   PoH is a covered enterprise under the FLSA. (ECF No. 64 at 12.)   Stansbury was jointly employed by Faulkner and PoH.   <u>See</u> 29 C.F.R. § 791.2(e)(2)(3).

To succeed on an unpaid overtime claim under the FLSA, an employee must prove, inter alia, "both that: (1) she performed work for which she was not properly compensated, and (2) her employer had actual or constructive knowledge of that overtime." <u>Rangel</u>, 2019 WL 4345698, at *2.   Stansbury cannot succeed on her FLSA overtime claim for two reasons.   One, she has not proven that she worked more than 40 hours a week.   Two, even if Stansbury had carried her burden in proving that she worked more than 40 hours a week, Stansbury has not proven that Faulkner had actual or constructive knowledge that she worked more than 40 hours.

The only evidence Stansbury put forth to support her contention that she worked overtime was her testimony and timesheets.   Stansbury's testimony was not credible.   On cross-

examination, she was thoroughly impeached. The timesheets submitted into the record are not reliable. They are not corroborated, but contradicted. Faulkner did not instruct Stansbury to keep timesheets or daily logs, had never seen them before, and did know they existed or that Stansbury was keeping them at the time. (ECF No. 76 at 58:5-58:9, 59:10-59:13, 61:2-61:3, 61:13-61:16, 66:9-66:12.). The line for supervisor signature on all the applicable timesheets is blank. (See Tr. Ex. Nos. 5, 8.)

Faulkner produced evidence to negate Stansbury's contention that she worked from 8:00 a.m. to 7:00 p.m. He testified that Stansbury was only scheduled to work from 8:00 a.m. to 4:30 p.m. (ECF No. 76 at 37:17-37:22; No. 77 at 125:3-125:7.) He testified that he and Stansbury had an understanding that she was not to work more than 40 hours. (Id. at 39:7-39:10, 61:16-61:23, 71:6-71:11.) His testimony was credible. His testimony was corroborated by the policy in PoH's employee handbook that all employee overtime must be approved before it was performed. (Tr. Ex. No. 7 at 30.) Stansbury had knowledge of that policy and followed it on at least one occasion, when Faulkner paid her overtime for working on Saturday. (See ECF No. 76 at 39:17-39:23.)

Faulkner's contention that Stansbury was not scheduled to work past 4:30 p.m. was also corroborated by his hiring another employee to do the same job and work the same hours that Stansbury

16

alleged she worked when she said she worked until 7:00 p.m.  Bills was hired to work from 5:00 p.m. until around 9:00 p.m. during most of the time Stansbury claims she worked past 4:30 p.m.  (See ECF No. 76 at 183:19-183:22; No. 77 at 96:11-97:6, 124:21-125:10.) Bills testified that, although Stansbury stayed around the house sometimes after she quit work, Stansbury did not perform work after Bills arrived at around 5:00 p.m.  (ECF No. 76 at 97:22-98:18; No. 77 at 41:24-42:3.)  Bills also testified that Stansbury sometimes asked Bills if Bills could come to Faulkner's house a little earlier, around 4:00 p.m., so Stansbury could leave early.  (Id. at 97:11-97:21.)  Bills' testimony was credible.

The testimony of Annie Faulkner, Faulkner's sister, also corroborates Faulkner's contention that Stansbury did not work past 4:30 p.m.  Annie Faulkner testified that, during the relevant time, she was sometimes in and out of Faulkner's home in the evenings between 5:00 p.m. and 7:00 p.m.  (See ECF No. 77 at 41:3-41:23.)  She testified that she never saw Stansbury working during that time.  (Id. at 41:24-42:3.)  Her testimony was credible.

Even if Stansbury had carried her overtime burden, Faulkner had no actual or constructive knowledge that Stansbury was working overtime.  "An employee, it is true, must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, but this requirement applies only if the employer knows or has reason to

believe that the employee is continuing to work and that work was suffered or permitted by the employer." Wood, 192 F. App'x at 380 (internal quotation marks and citations omitted). Faulkner did not know, nor did he have reason to believe, that Stansbury was working past her scheduled 4:30 p.m. end time.

Faulkner understood that Stansbury would not work more than 40 hours a week. (ECF No. 76 at 39:7-39:10, 61:16-61:23, 71:6-71:11.) On at least one occasion, when Stansbury worked more than 40 hours, Faulkner paid her separately for that work. (Id. at 39:17-39:23.) Faulkner did not expect Stansbury to work past 4:30 p.m. and indeed hired another employee, Bills, to come in during the evenings and do the job that Stansbury was hired to do after Stansbury was off. (ECF No. 77 at 96:13-96:17.) Faulkner did not instruct Stansbury to keep timesheets, had never seen the timesheets prior to the lawsuit, and did know the timesheets existed or that Stansbury was keeping them at the time. (Id. at 58:5-58:9, 59:10-59:13, 61:2-61:3, 61:13-61:16, 66:9-66:12.) Stansbury never discussed the timesheets with Faulkner and never asked him to sign them. Stansbury never questioned her pay or requested overtime payment.

Faulkner had a reasonable process for Stansbury to report her overtime and Stansbury did not follow it. "[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment

18

if the employee fails to follow the established process." <u>White</u>, 699 F.3d at 876 (citations omitted).    Faulkner, through PoH's employee handbook, had a policy that each employee was required to have overtime work approved by Faulkner before it was performed. (<u>See</u> Tr. Ex. No. 7 at 30.)    That policy could be satisfied by asking Faulkner if overtime could be performed.    (<u>See</u> <u>id.</u>)    It was not unreasonable to expect Stansbury to follow that policy.    On at least one occasion she did, and she was properly compensated.    (ECF No. 76 at 39:17–39:23.)    There is no evidence in the record that Faulkner prevented Stansbury from reporting overtime.    Indeed, there is evidence to the contrary.    Faulkner was not otherwise notified of Stansbury's unreported work.    Neither exception to this "reasonable process" rule applies.    <u>Craig</u>, 823 F.3d at 389. Faulkner cannot be held liable for "an obligation that [he] ha[d] no reason to think exist[ed]."    <u>Wood</u>, 192 F. App'x at 381.

Stansbury has not proven that she worked more than 40 hours a week, and even if she had, Faulkner had no knowledge that she did.    The Court need not consider evidence tending to prove the other elements of Stansbury's claim.    <u>See</u> <u>B&L Mgmt. Grp., LLC v.</u> <u>Adair</u>, No. 17-cv-2197, 2019 WL 3459244, at *10-13 (W.D. Tenn. July 31, 2019) (not considering other elements of civil conspiracy claim because plaintiff did not prove an underlying tort or wrong); <u>Ducks</u> <u>Unlimited, Inc. v. Boondux, LLC</u>, No. 2:14-cv-02885, 2017 WL

3579215, at *35-36 (W.D. Tenn. Aug. 18, 2017) (similar for trademark dilution claim).

### V.   Conclusion

For the foregoing reasons, Stansbury's claim against Faulkner and PoH for failure to pay overtime under the FLSA is DENIED.


So ordered this 16th day of June, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE